Lorenzo M. Alagia v. Commissioner.
Alagia v. Commissioner
Docket No. 51429.
United States Tax Court
T.C. Memo 1955-94; 1955 Tax Ct. Memo LEXIS 246; 14 T.C.M. (CCH) 324; T.C.M. (RIA) 55094; April 19, 1955
Paul E. Waring, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioner's income taxes for the years 1942 through 1946 in the total amount of $72,239.85 and fraud penalties as follows: Fraud
Year
Penalties
1942
$ 887.35
1943
3,229.32
1944
14,345.94
1945
6,792.73
1946
10,864.59 Petitioner did not appear at the hearing. Respondent's motion for judgment as to the income tax deficiencies was granted. The sole remaining issue is petitioner's liability for the fraud penalties. Findings of Fact Petitioner, an individual, resided in Elkton, Maryland, during the years in controversy and filed Federal income tax returns for those years *247 with the collector for the district of Maryland. During the years 1942 through 1946, the years in controversy, petitioner operated the Hotel Ritz at Elkton, Maryland. He owned various parcels of real estate in Elkton and on its outskirts from which he received rent. He received a salary for work performed by him on behalf of Alagia Wholesale Liquors. He also operated a farm known as Beaver Dam Farm. During this period he was in partnership with his brother in connection with property known as Frenchtown Manor where they raised crops. They also subdivided its acreage and built residences thereon for sale. He and certain other Elkton residents purchased property from the Armed Forces during that period, some of which they sold and some of which they rented. Petitioner was also engaged in taking horse racing bets in the Hotel Ritz. During the year 1942 the Triumph Explosives Corporation opened a large plant at Elkton, causing a great increase in the population. Soldiers and sailors also came to the town in large numbers from the vicinity. This population increase resulted in a booming business for Elkton restaurants, hotels, and bars during the years 1942 through 1946. Petitioner's *248 income tax returns for each of the years in controversy were examined by an Internal Revenue Agent who interviewed petitioner and requested him to submit for examination all of his books and records relating to the income earned by him during each of the years 1942 through 1946. The books and records submitted by petitioner were meager and unrelated, and his correct taxable income for each of the years in controversy could not be determined from them. Alagia Wholesale Liquors, which was operated by petitioner during the years 1943 and 1944, sold liquor above ceiling prices. The ceiling price of the liquor was paid for by check, and the premium was paid in cash directly to petitioner. During the years 1943 and 1944, premium cash payments to Alagia Wholesale Liquors totaled $15,169.30, of which amount $10,501.80 was paid to petitioner personally. Petitioner did not report as taxable income on his gross tax returns for any year the overceiling cash price of liquor received by him. During the year 1939 Mary Alagia, petitioner's mother, was the owner of a parcel of real estate known as 100 East Main Street, Elkton, Maryland, which she operated as a butcher shop. Her two sons, petitioner *249 and Louis, persuaded her to convert this property into a hotel so that they could operate it for her. Petitioner went to a man named Winakur, in Baltimore, Maryland, to obtain a loan for the construction of the hotel. Winakur agreed to lend money on this property provided that a corporation would be formed and that Mary would transfer to that corporation certain parcels of real estate which she had inherited from her husband, including the 100 East Main Street property. Mary agreed and a corporation was formed. Mary deeded her inherited real estate to the corporation. A loan of $32,500 was obtained on the property and was used to pay for material, labor, equipment, and furniture acquired at the time of conversion of the building from a meat market to a hotel. The latter was named the Hotel Ritz. The operation of the Hotel Ritz by petitioner and Louis Alagia was not successful. On May 29, 1939, real estate taxes on this property were in default. Pursuant to statute, the Town of Elkton, Maryland, sold this property at public auction for $250. This property was bid in by the Town of Elkton, and the sale was ratified by the Circuit Court for Cecil County, Maryland. Because of the precarious *250 financial condition of the corporation at that time, Mary Alagia agreed that if petitioner and Louis would pay the delinquent taxes on this property and redeem it, she would cause the corporation to transfer the property to them. On December 11, 1940, a special meeting of the president and commissioners of the Town of Elkton was held at Elkton, Maryland, at which petitioner and Louis Alagia were present, for the purpose of discussing the amount to be paid to the town in order to regain title to the Hotel Ritz and other small parcels of real estate located on East Main Street, Elkton, Maryland. At this meeting it was agreed that petitioner and Louis Alagia would assume responsibility for County and State taxes as if they had been the rightful owners of the property and pay the Town of Elkton the sum of $1,214.28, and that the mortgage on the property would continue as before. Upon payment of this amount, the town would execute deeds to the former owners giving them possession of the property in question. The Alagias paid to the Town of Elkton $600 on December 11, 1940; $550 on January 15, 1941; and the balance of $64.28 on April 16, 1941. On May 18, 1942, Eugene Racine, Ex-Sheriff, *251 Cecil County, Maryland, executed a deed to the president and commissioners of the Town of Elkton with respect to this real estate. The president and commissioners of the Town of Elkton, Maryland, then executed a deed to The Alagia Realty Corporation with respect to the real estate, which stated that within the time allowed for the redemption of this property, The Alagia Realty Corporation agreed with the president and board of town commissioners of the Town of Elkton to redeem these lands and that the president and commissioners of the Town of Elkton were authorized to grant and convey these lands and premises to The Lagia Realty Corporation upon payment of the sum of $1,214.28, being the amount of the sale with interest and charges thereon and the amount of taxes subsequently accrued on the premises through the year 1940 and the amounts of water rents due thereon. This deed was recorded on May 18, 1942. On May 18, 1942, The Alagia Realty Corporation, as grantor, conveyed this real estate, including the Hotel Ritz property, to petitioner and Vincent J. DiPaola, as grantees. The balance due on the mortgage recorded against this property in 1940 was $32,000, which added to $1,200, *252 representing real estate taxes paid by petitioner and Louis on this property, made a total cost to them for this property of $33,200. Of this amount, $15,000 is allocated to furniture, fixtures and equipment of the Hotel Ritz. The difference of $18,200 represents the cost of the Hotel Ritz included in petitioner's real estate assets. Petitioner neither maintained nor produced records with respect to his gambling activities. During the years 1942 to 1944, inclusive, petitioner paid fines resulting from raids on the Hotel Ritz and his conviction for keeping a gambling table. Petitioner issued checks on or before December 1, 1946 but after 1941 in the total amount of $3,042.90 in payment of life insurance premiums to the Continental Life Insurance Company and Continental American Life Insurance Company. On September 22, 1944, petitioner and his wife filed a personal financial statement with the Elkton Banking and Trust Company, Elkton, Maryland, showing total assets of $231,000, liabilities of $48,400, and a net worth of $182,600. On August 26, 1946, petitioner filed a personal financial statement with the Elkton Banking and Trust Company, Elkton, Maryland, showing total assets *253 of $258,000, liabilities of $41,038.50, and a net worth of $216,961.50. The increase in net worth during the period September 22, 1944, to August 26, 1946, as shown by these financial statements was $34,361.50. The increase in petitioner's net worth during each of the taxable years ended December 31, 1942 through December 31, 1946, was as follows: Year
Amount
December 31, 1942
$ 4,797.66
December 31, 1943
14,976.77
December 31, 1944
59,552.73
December 31, 1945
22,357.77
December 31, 1946
37,080.95 Petitioner had gross taxable income in the foregoing respective amounts. For each of the taxable years 1942 through 1946, petitioner filed Federal income tax returns in which he reported net income and/or net losses as follows: Year
Amount
1942
($2,337.41)
1943 * 3,620.84 During the year 1942 the Triumph Explosives Corporation opened a large plant at Elkton, causing a great increase in the population. Soldiers and sailors also came to the town in large numbers from the vicinity. This population increase resulted in a booming business for Elkton restaurants, hotels, and bars during the years 1942 through 1946. Petitioner's income tax returns for each of the years in controversy were examined by an Internal Revenue Agent who interviewed petitioner and requested him to submit for examination all of his books and records relating to the income earned by him during each of the years 1942 through 1946. The books and records submitted by petitioner were meager and unrelated, and his correct taxable income for each of the years in controversy could not be determined from them. Alagia Wholesale Liquors, which was operated by petitioner during the years 1943 and 1944, sold liquor above ceiling prices. The ceiling price of the liquor was paid for by check, and the premium was paid in cash directly to petitioner. During the years 1943 and 1944, premium cash payments to Alagia Wholesale Liquors totaled $15,169.30, of which amount $10,501.80 was paid to petitioner personally. Petitioner did not report as taxable income on his gross tax returns for any year the overceiling cash price of liquor received by him. During the year 1939 Mary Alagia, petitioner's mother, was the owner of a parcel of real estate known as 100 East Main Street, Elkton, Maryland, which she operated as a butcher shop. Her two sons, petitioner and Louis, persuaded her to convert this property into a hotel so that they could operate it for her. Petitioner went to a man named Winakur, in Baltimore, Maryland, to obtain a loan for the construction of the hotel. Winakur agreed to lend money on this property provided that a corporation would be formed and that Mary would transfer to that corporation certain parcels of real estate which she had inherited from her husband, including the 100 East Main Street property. Mary agreed and a corporation was formed. Mary deeded her inherited real estate to the corporation. A loan of $32,500 was obtained on the property and was used to pay for material, labor, equipment, and furniture acquired at the time of conversion of the building from a meat market to a hotel. The latter was named the Hotel Ritz. The operation of the Hotel Ritz by petitioner and Louis Alagia was not successful. On May 29, 1939, real estate taxes on this property were in default. Pursuant to statute, the Town of Elkton, Maryland, sold this property at public auction for $250. This property was bid in by the Town of Elkton, and the sale was ratified by the Circuit Court for Cecil County, Maryland. Because of the precarious financial condition of the corporation at that time, Mary Alagia agreed that if petitioner and Louis would pay the delinquent taxes on this property and redeem it, she would cause the corporation to transfer the property to them. On December 11, 1940, a special meeting of the president and commissioners of the Town of Elkton was held at Elkton, Maryland, at which petitioner and Louis Alagia were present, for the purpose of discussing the amount to be paid to the town in order to regain title to the Hotel Ritz and other small parcels of real estate located on East Main Street, Elkton, Maryland. At this meeting it was agreed that petitioner and Louis Alagia would assume responsibility for County and State taxes as if they had been the rightful owners of the property and pay the Town of Elkton the sum of $1,214.28, and that the mortgage on the property would continue as before. Upon payment of this amount, the town would execute deeds to the former owners giving them possession of the property in question. The Alagias paid to the Town of Elkton $600 on December 11, 1940; $55 on January 15, 1941; and the balance of $64.28 on April 16, 1941. On May 18, 1942, Eugene Racine, Ex-Sheriff, Cecil County, Maryland, executed a deed to the president and commissioners of the Town of Elkton with respect to this real estate. The president and commissioners of the Town of Elkton, Maryland, then executed a deed to The Alagia Realty Corporation with respect to the real estate, which stated that within the time allowed for the redemption of this property, The Alagia Realty Corporation agreed with the president and board of town commissioners of the Town of Elkton to redeem these lands and that the president and commissioners of the Town of Elkton were authorized to grant and convey these lands and premises to The Lagia Realty Corporation upon payment of the sum of $1,214.28, being the amount of the sale with interest and charges thereon and the amount of taxes subsequently accrued on the premises through the year 1940 and the amounts of water rents due thereon. This deed was recorded on May 18, 1942. On May 18, 1942, The Alagia Realty Corporation, as grantor, conveyed this real estate, including the Hotel Ritz property, to petitioner and Vincent J. DiPaola, as grantees. The balance due on the mortgage recorded against this property in 1940 was $32,000, which added to $1,200, representing real estate taxes paid by petitioner and Louis on this property, made a total cost to them for this property of $33,200. Of this amount, $15,000 is allocated to furniture, fixtures and equipment of the Hotel Ritz. The difference of $18,200 represents the cost of the Hotel Ritz included in petitioner's real estate assets. Petitioner neither maintained nor produced records with respect to his gambling activities. During the years 1942 to 1944, inclusive, petitioner paid fines resulting from raids on the Hotel Ritz and his conviction for keeping a gambling table. Petitioner issued checks on or before December 1, 1946 but after 1941 in the total amount of $3,042.90 in payment of life insurance premiums to the Continental Life Insurance Company and Continental American Life Insurance Company. On September 22, 1944, petitioner and his wife filed a personal financial statement with the Elkton Banking and Trust Company, Elkton, Maryland, showing total assets of $231,000, liabilities of $48,400, and a net worth of $182,600. On August 26, 1946, petitioner filed a personal financial statement with the Elkton Banking and Trust Company, Elkton, Maryland, showing total assets of $258,000, liabilities of $41,038.50, and a net worth of $216,961.50. The increase in net worth during the period September 22, 1944, to August 26, 1946, as shown by these financial statements was $34,361.50. The increase in petitioner's net worth during each of the taxable years ended December 31, 1942 through December 31, 1946, was as follows: *254 Year
Amount
December 31, 1942
$ 4,797.66
December 31, 1943
14,976.77
December 31, 1944
59,552.73
December 31, 1945
22,357.77
December 31, 1946
37,080.95 Petitioner had gross taxable income in the foregoing respective amounts. For each of the taxable years 1942 through 1946, petitioner filed Federal income tax returns in which he reported net income and/or net losses as follows: Year
Amount
1942
($2,337.41)
1943
* 3,620.84
1944
177.65
1945
396.57
1946
3,063.40
The total income reported by petitioner on the income tax returns filed by him during the taxable years 1942 through 1946 was $4,921.05. Petitioner's taxable income for these taxable years totaled $161,988.69. As admitted by petitioner in paragraph 5 A(8) of his petition, he had a net income for the years in controversy not less than as follows: Year
Amount
1942
$ 9,625.71
1943
10,866.02
($11,693.30 Victory Tax
net income)
1944
18,762.30
1945
9,445.17
1946
5,467.69
The only income tax paid by petitioner on income earned by him during the years 1942 through 1946 was $760.37 with respect *255 to the taxable year ended December 31, 1943. The deficiency in petitioner's income tax for the years in controversy totaled $72,239.85. On March 13, 1951, petitioner was indicted under the provisions of section 145(b) of the Internal Revenue Code of 1939 for willfully, knowingly, unlawfully, and feloniously attempting to defeat and evade a large part of his income tax due and owing by him to the United States of America for the calendar years 1944, 1945, and 1946 by filing and causing to be filed with the collector for the district of Maryland false and fraudulent income tax returns for each of those years. During the period from May 25, 1953 through June 1, 1953, petitioner was tried for tax evasion before a jury and was found guilty. On June 5, 1953, petitioner was sentenced to a term of 18 months' imprisonment and a fine of $15,000 and costs, with commitment in default of payment of fine and costs. On June 6, 1953, petitioner was committed to the Lewisburg Penitentiary at Lewisburg, Pennsylvania. Some part of the deficiencies for each of the years 1942 through 1946 was due to fraud with intent to evade tax. Opinion We have found as a fact that the deficiencies were at *256 least in part due to fraud. This finding disposes of the only issue. Petitioner was required by law to report all of his taxable income on his return. "He failed to do so. The amounts involved could not possibly have been overlooked. His returns were all false. The irresistible inference from the facts in this record is that the petitioner intended his returns to be false and fraudulent, to evade the tax lawfully due from him." Louis Halle, 7 T.C. 245, 251, affd. (C.A. 2) 175 Fed. (2d) 500, certiorari denied 338 U.S. 949. Decision will be entered for the respondent. Footnotes
*. Subject to income tax and Victory Tax.↩